IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
Civil Action No. 2:21-cv-00034-JG

| | |
|---|---|
| LILLIE BROWN CLARK, as the Administrator for the Estate of Andrew Brown Jr., <br><br> Plaintiff, <br><br> v. <br><br> Investigator DANIEL MEADS, in his individual capacity; Deputy Sheriff II ROBERT MORGAN, in his individual capacity; Cpl. AARON LEWELLYN, in his individual capacity; Sheriff TOMMY S. WOOTEN II, in his official capacity; and WESTERN SURETY BONDING COMPANY, surety for Sheriff Tommy S. Wooten II, <br><br> Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEY'S FEES** |

NOW COMES defendant Tommy S. Wooten II, by and through counsel, and, pursuant to Local Rule 7.1(f), responds to the Plaintiff's Motion for Attorney's Fees[1] as follows:

The Defendants take no position on whether the Court should approve the request for attorney's fees, but offer the following below for the Court's consideration.

---

[1] The plaintiff filed the same motion twice. (Doc. Nos. 118 and 119.)

## DISCUSSION

The plaintiff's attorneys seek $1.2 million for attorney's fees and $43,428.77 for expenses. (Doc. No. 119-1.) That leaves the remainder for the beneficiaries of the Estate of Andrew Brown Jr. Four beneficiaries are minors, and the plaintiff has informed the Court that "[t]he amount of the settlement proceeds to be distributed to the minors is $1,172.111.65." (Doc. No. 114.) The adult children will receive the rest, which is $584,459.

Federal district courts have "discretion in approving fee awards, particularly when its power to protect minors or the disabled is involved." Pellegrin v. National Union Fire Insur. Co., 605 F.3d 238, 240 (4th Cir. 2010). Such a request is "evaluate[d] . . . under a reasonableness standard." Id. at 243. When a minor is involved, "the court . . . has a duty to protect the minor's interests," and " '[i]ndependent investigation by the court as to the fairness and reasonableness of a fee to be charged against a minor's estate or interest is required.' " Id. (quoting Dean v. Holiday Inns Inc., 860 F. 2d 670, 683 (6th Cir. 1988)).

In determining reasonableness, courts look at: " '(1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature and length

2

Case 2:21-cv-00034-JG Document 120 Filed 07/18/22 Page 2 of 11

of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.'" Id. at 244 (quoting Allen v. United States, 606 F.2d 432, 435 (4th Cir. 1979)).

The defendants will address a few relevant factors:

**1. Time and labor**

As for the time and labor required in this case, minimal discovery was conducted. The discovery period lasted three and a half months, from January 28, 2022, when the court issued a case management order (Doc. No. 81), to May 20, 2022, when the parties reached an agreement in principle to resolve the case during a telephone conference with the Court. No depositions were taken and no expert reports were produced. Written discovery consisted of a total of two interrogatories, a single request for production of one set of documents, and a set of requests for admission consisting of five statements. The court held one hearing, on May 3, 2022, concerning the release of a state investigative report. (Doc. No. 94.) Thus, discovery in this case required little time and labor. The parties then participated in a day-long judicial settlement conference. (Doc. No. 95.)

The plaintiff's attorneys assert that, in total, they worked 1,610 hours on this case. (Doc Nos. 119-2, 119-3, 119-4, 119-5.) The Court can determine whether hours worked is an appropriate measurement tool, but, if it is, at eight hours a day, that comes to 201 full days of work, spread among four attorneys, over a little more than a year. With 1,610 hours, the amount of fees the plaintiff's attorneys seek comes to $745 an hour.

By contrast, the undersigned counsel represents that his customary hourly billable rate is $380. Using that rate as a barometer, that would come to $611,800 in plaintiff's attorney's fees, which is about half what the plaintiff's attorneys seek. If the Court deems it necessary, to determine whether the plaintiff's fee request is reasonable under the hours-worked metric, the Defendants will provide the Court with a statement about their own hours worked and fees in this case.

2. **Novelty or difficulty of the case**

Contrary to the plaintiff's representations, this was not a novel, complex, or difficult case, but a straight-forward one involving whether the individual defendant officers used excessive force in violation of the Fourth Amendment and state law. Such cases are filed in federal courts regularly, as any search of court dockets will show and as the plaintiff repeatedly pointed out in other filings in this case.

The plaintiff claims that a determination by the District Attorney for Pasquotank County not to criminally prosecute the officers under state law made the case difficult, but such a decision has no bearing on a civil case and in fact it is the norm because officers are often sued, as any search of a legal database will show, yet rarely charged, as has been often reported. See, e.g., Tom Jackman and Devlin Barrett, "Charging officers with crimes is still difficult for prosecutors," The Washington Post, May 29, 2020 (noting that only 153 officers were charged between 2005 and 2014 for killing a suspect)[2]. Moreover, the defendant officers in this case

---

[2] Found at: https://www.washingtonpost.com/crime-law/2020/05/29/charging-cops-with-crimes-is-still-difficult-prosecutors (last visited July 15, 2022).

could still be charged under federal law.  See Ben Finley and Jonathan Drew, "FBI starts probe into death of Black man killed by deputies," The Associated Press, April 28, 2021.[3]  The plaintiff also oddly claims that the District Attorney's decision would have had an effect on the views of potential jurors at trial, but, even if this were true (and it is not), it has nothing to do with handling the case in discovery, which, in this case, since there was no trial, is the proper metric the Court can use for evaluating the difficulty of the case.[4]

### 3. Undesirability of case

The case was not one that attorneys would consider as undesirable to undertake, as shown by the news media attention it attracted.  See Doc. Nos. 68, 69, and 70.  Rather, since the plaintiff's attorneys are "Civil Rights Attorneys" (Pl.'s Brf., p. 2) and it attracted significant national attention, it was an extremely desirable case to undertake – so much so that two of the plaintiff's attorneys traveled from out of state to appear in the case.

---

[3] Found at: https://apnews.com/article/shootings-north-carolina-race-and-ethnicity-elizabeth-city-bfa6b5f803a7041be6fdd4efe4cc762a (last visited July 15, 2022).

[4] The plaintiff claims that, if this case went to trial, jurors would be from Pasquotank County (Pl.'s Brf., p. 5), but this case was assigned to the district judge in New Bern, which is five counties away.  There are 44 counties in this District, spread among four divisions.  See http://www.nced.uscourts.gov/counties.   A jury pool would not contain any residents of Pasquotank County if jurors were drawn from the Eastern Division, in which New Bern is located, because the Eastern Division has 12 counties and Pasquotank County is not among them.

5

4. **Customary fee or fees in similar cases**

As to the customary fee for such cases or awards in similar cases, the plaintiff has offered no evidence or case law to show that a 40 percent recovery is customary or has been obtained in similar cases.

The Court thus has no examples of settlements or verdicts in cases involving law enforcement officers' alleged use of excessive force from which to compare.[5] However, by way of just one example, the fee in Pellegrin, a complex personal-injury case not involving law enforcement, was one-third of recovery. Pellegrin, 605 F.3d at 240. By contrast, the plaintiff's attorneys here seek more than that for a straight-forward case that was settled early in discovery.

The plaintiff states, incorrectly, that the minors will receive "the lion [*sic*] share" [of the] overall settlement amount." (Pl.'s Brf., p. 7.) But, as the Court noted at the hearing on July 7, 2022, the plaintiff's attorneys seek $1.2 million, which is more than the $1,172,111 that the four minors will receive. It is false to say that $1,172,111 is "the lion['s] share" of a $3 million settlement when it is less than what the attorneys seek ($1.2 million). A "lion's share" is "the largest portion" of something, according to the Merriam-Webster Dictionary.[6] The plaintiff's attorneys

---

[5] There is no shortage of such settlements by which to compare. The Town of Spring Lake, North Carolina, which is just outside Fayetteville, just settled such a case for $3 million. See, e.g., https://www.townofspringlake.com.

[6] Found at: https://www.merriam-webster.com/dictionary/lion%27s%20share) (last checked on July 15, 2022).

thus actually are the ones who will receive the "lion['s] share" of the settlement proceeds if their request is approved.

In sum, of the four distributions of the $3 million settlement – proceeds to the minor beneficiaries, proceeds to the adult beneficiaries, attorney's fees, and expenses – the largest distribution goes to the attorneys. Whether this is reasonable is for the Court to determine, but it must do so based on an accurate representation of the facts and not based on an obviously false statement.

**5. Experience, reputation, and ability of the lawyers:** The defendants will address two of these factors.

First, as to experience, the plaintiff's attorneys have minimal experience in civil rights cases, as a search of their reported cases in Westlaw will show. Two of the four plaintiff's attorneys are not even admitted to federal court, so their experience prior to this case was, at best, limited.

Second, as to ability, because there were no depositions, only one hearing, no motions, and no trial, the Court can consider the quality of the plaintiff's written work product in this case as a measure of ability. In this regard, the Court may consider that nearly every document the plaintiff submitted to the Court in this case contained numerous errors. No attorney's written work product will be perfect, but the plaintiff's filings have been consistently filled with errors. The brief filed in support of the motion for attorney's fees contained at least a dozen errors, for example, and one supporting affidavit contained this incoherent statement: "Currently, I am the

7

lead counsel on (6) six law enforcement shootings cases that resulted in the death throughout the United States." Harry M. Daniels Decl. ¶ 7 (Doc. No. 119-3).

In addition, the plaintiff also made several erroneous assertions of fact and law during this case, including the allegation that one of the warrants for Andrew Brown Jr. was unlawful because it was not manually signed. See Amd. Compl. ¶ 15 (Doc. No. 56); Answ. to Amd. Compl. ¶ 15 (Doc. No. 65). The plaintiff made this allegation in the original complaint (Doc. No. 1), a document that itself was not manually signed. The plaintiff's attorneys were informed of this error when the defendants filed a brief in support of a motion to dismiss (Doc. Nos. 53-54), yet the plaintiff's attorneys still re-alleged that the warrant was unlawful when they filed the amended complaint even though they had been informed that this allegation was false by both statute and case law. This allegation is still being reported by the news media.[7] Repeatedly misstating the law or facts, especially when presented with evidence of the error, is some evidence of the quality of legal advocacy.

Finally, the plaintiff received 10 corrective notices or notices of deficiency from the Court in the first two weeks after the lawsuit was filed, according to the case docket. These filing errors caused the Court to send the plaintiff's attorneys copies of the Court's Policies and Procedures Manual and the Local Civil Rules. (Doc. Nos. 7 and 8.) This is also some evidence related to the quality of advocacy.

---

[7] See "Estate of Andrew Brown Jr. . . . reaches $3 million settlement with county," CNN, June 7, 2022 (found at: https://www.cnn.com/2022/06/07/us/andrew-brown-estate-settlement-pasquotank-county-north-carolina/index.html) (last visited July 15, 2022).

Given all of the above, it is fair and appropriate for the Court to consider whether the attorney's fees in this case should be greater than the amount provided to the four minor children who are beneficiaries of Andrew Brown Jr.'s estate.

## **CONCLUSION**

For the reasons and authorities cited herein, the Defendants ask the Court to exercise its informed discretion in determining whether the request of the plaintiff's attorneys for $1.2 million in fees is reasonable and appropriate.

Respectfully submitted, this 18th day of July, 2022.

/s/ Christopher J. Geis
CHRISTOPHER J. GEIS, N.C. St. Bar No. 25523
RIPLEY RAND, N.C. St. Bar No. 22275
SONNY S. HAYNES, N.C. St. Bar No. 41303
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Email:   Chris.Geis@wbd-us.com
         Ripley.Rand@wbd-us.com
         Sonny.Haynes@wbd-us.com
*Attorneys for Defendants Sheriff Tommy S. Wooten II and Western Surety Company*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an attorney at law licensed to practice in the State of North Carolina, is attorney for Defendants Sheriff Tommy S. Wooten II and Western Surety Company in this matter, and is a person of such age and discretion as to be competent to serve process.

I hereby certify that on July 18, 2022, I electronically filed the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEY'S FEES** with the Clerk of the Court using the CM/ECF system, which will send notification of such to the following CM/ECF participant:

ADDRESSEE(S):

Harry M. Daniels
Law Offices of Harry M. Daniels, LLC
233 Peachtree Street, NE, Suite 1200
Atlanta, GA 30303
Telephone: 678-664-8529
Daniels@harrymdaniels.com
*Attorney for Plaintiff*

Scott C. Hart
Ryan D. Eubanks
Frederick Hughes Bailey, III
Sumrell Sugg, P.A.
Post Office Drawer 889
New Bern, NC 28563
Telephone: 252-633-3131
shart@nclawyers.com
reubanks@nclawyers.com
fbailey@nclawyers.com
*Attorneys for Defendant Morgan*

Dan M. Hartzog, Jr.
Katherine Barber-Jones
Hartzog Law Group LLP
2626 Glenwood Avenue, Suite 305
Raleigh, NC 27608
Telephone: 919-670-0338
dhartzogjr@hartzoglawgroup.com
kbarber-jones@hartzoglawgroup.com
*Attorneys for Defendant Meads*

Norwood P. Blanchard, III
Crossley, McIntosh, Collier, Hanley & Edes, PLLC
5002 Randall Parkway
Wilmington, NC 28403
Telephone: 910-762-9711
norwood@cmclawfirm.com
*Attorney for Defendant Lewellyn*

Notification of filing being sent **via U.S. Mail** to the following CM/ECF nonparticipants:

Bakari Sellers
Strom Law Firm
6923 N. Trenholm Road
Columbia, SC 29206
Telephone: 803-252-4800
bsellers@stromlaw.com

Chance D. Lynch
Lynch Law, PLLC
1015A Roanoke Avenue, Suite A
Roanoke Rapids, NC 27870
Telephone: 252-507-0110
chancelynch@lynchlaw.org

Chantel Cherry-Lassiter
CCL Law Office, PLLC
1851 W. Ehringhaus Street, #136
Elizabeth City, NC 27909
Telephone: 252-999-8380
chantelcherrylassiter@cclaw.org

*Attorneys for Plaintiff*

/s/ Christopher J. Geis
CHRISTOPHER J. GEIS
N.C. State Bar No. 25523
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
Email: Chris.Geis@wbd-us.com
*Attorney for Defendants Sheriff Tommy S. Wooten II and Western Surety Company*